In the Matter of the Accounting of BEATRICE L. GLENN, as Executrix of ROBERT GLENN, Deceased.

Surrogate's Court, Suffolk County, August 23, 1962.

*Levine, Morgulas & Foreman* for executrix. *Berg & Harrison* for claimants.

PIERSON R. HILDRETH, S. On this accounting the court is required to determine the validity of a claim asserted by decedent's daughter-in-law on behalf of and as general guardian for her two children who are grandchildren of decedent.

The claim in the amount of $41,700 is alleged to arise from an alleged oral contract made on August 11, 1957, between decedent and the claimant under which decedent allegedly obligated himself to support these grandchildren until they reached their majority.

The claimant married decedent's son, Robert E. Glenn, on August 1, 1947. The evidence indicates that the marriage has not been very successful. The claimant left her husband in 1948 and in 1954 for periods of about three months. In each instance she went to her mother in England and then returned.

In the early part of June, 1957, the claimant retained an attorney to assist her in negotiating and obtaining a separation agreement between herself and her husband. This resulted in a separation agreement which was executed by husband and wife on September 16, 1957, and under which the husband agreed

to pay $65 per week in support of his children for the first two years of the agreement and $60 per week thereafter during their minority. The children were born on July 13, 1950 and on July 10, 1953, respectively.

The main evidence in support of the existence of the alleged contract with the decedent is the testimony of claimant's mother. A resident of England, she visited her daughter in this country from time to time. One of these visits occurred in the Summer of 1957. She testified that she was at decedent's home on Long Island on August 11, 1957, and was present at a conversation had that day between the claimant and decedent. The circumstances which gave rise to the conversation appear to be that the claimant was threatening to divorce decedent's son and to take her children and herself to England, although no specific grounds for a divorce were made known to decedent. The testimony of claimant's mother, in substance, is that decedent told claimant that if she would not divorce her husband and would not return to England, that whatever agreement of separation she entered into with her husband, he would support the two children until they became of age. So far as direct testimony goes, this is the extent of proof of the alleged agreement.

From some time in June, 1957, and until the execution of the separation agreement of September 16, 1957, the claimant was represented by her own independent counsel. She testified that she discussed with her counsel all problems which she had with regard to her husband and his family and her relations with her husband's family. Nevertheless, there is absolutely nothing in the separation agreement to indicate that the decedent was under any obligation to carry out its provisions for the support of decedent's grandchildren in the event the son did not do so.

Claimant contends that although she received up to the time of decedent's death, all of the payments due her under the separation agreement, that many of the payments were made by checks drawn on corporate checking accounts of corporations controlled by decedent and by checks drawn on a personal " Special " checking account of the decedent and that this constitutes evidence showing payment of the sums due under the separation agreement that the decedent paid or assumed to pay by reason of his alleged oral agreement with her of August 11, 1957. The evidence herein indicates however that claimant's husband was on the payroll of such corporations and that net salary payments due him were broken so that there was issued a check to her order of $65 and a check to him for the balance, and the corporate records so indicate. With respect to the

checks drawn on decedent's personal " Special Account," there is evidence that directly prior to the issuance of each of them by decedent that the claimant's husband had indorsed his entire current salary check to his father. This indicates that the son himself was making the payments he was obliged to make and that they were not being made by the decedent.

A claim such as this must be established by clear and convincing evidence. In the opinion of the court the proof is wholly insufficient to establish the alleged liability of the decedent. The evidence fails to indicate whether the alleged transaction was merely a promise, whether it was a direct obligation, or whether it was a guarantee to make payments under the terms of a then nonexistent contemplated written agreement between claimant and decedent's son if the son did not. Under these circumstances, to find that the alleged oral agreement was a binding agreement and to spell out its terms and considerations would be indulging in pure speculation. Accordingly the claim is dismissed. Settle decree on notice accordingly.